Good morning, Your Honors. Good morning. May it please the Court, my name is Stacey Tolchin and I, with my co-counsel Megan Brewer, represent Dr. Poursina. I would like to reserve four minutes of my time for rebuttal. All right, please be reminded that the time shown is your total time remaining. Thank you. Section 1252A2B2 did not strip the District Court of Jurisdiction to review Dr. Poursina's entire complaint. The Court must first start with the principle affirmed by the Supreme Court in Kukana that there is a presumption favoring judicial review of an agency's actions. It takes clear and convincing evidence of Congress's intent to dislodge this presumption. The National Interest Waiver Statute does not contain this clear and convincing language. ANA International controls this case. As an ANA, the statute at issue uses the term may. It uses the term deem in reference to the agency's discretion. The National Interest Waiver Statute provides that applicants with advanced degrees or exceptional abilities may bypass the requirement of a labor certification when the Attorney General deems it to be in the national interest. The term national interest is of paramount importance here because that is the statutory hook that is required under ANA and Spencer Enterprises to obtain judicial review. ANA, after reviewing Spencer Enterprises, holds that 1252A2B2 does not apply where 1. there is a statutory hook defining the exercise of discretion and 2. where there is a constraint on the agency's exercise of discretion, such as a precedent agency decision. For instance, in ANA, the Court found jurisdiction to review a visa revocation because the statute contained the statutory hook of good and sufficient cause and because there was a precedent decision from the agency in matter of topic which defined good and sufficient cause. Here, yes. Ginsburg-Mills, I ask you, is your argument that the statute does not grant discretion to the agency or is your argument that the statute does grant discretion but there have been parameters defined sufficiently that the discretion is capped? The latter, Your Honor. Okay. Right. So that it does grant discretion, but there's a statutory hook for Spencer Enterprises, national security, and then we have a precedent decision, the NISDOT decision, and then that was vacated in a matter of DANISAR interpreting the term national interest. And this is where the Court's case law is different from the only other circuit court to address this precise statute, which is the D.C. Circuit in Jew. In Jew, the Court held that 1252A2B2 applied to the national interest waiver because there was no constraint on the agency's authority. But the law in this circuit is different under ANA because the precedent establishes that when there is a statutory hook and a restraint on the agency's authority, 1252A2B2 is inapplicable. Notably, the D.C. Circuit does not contain this analysis, nor does it even cite the NISDOT precedent decision. Now, respondent argues that an agency's precedent decision issued by USCIS is not binding. That ignores the clear language of the agency's own regulation at 8 CFR 103.3C, which states that precedent decisions are binding on all service employees in the administration of the Immigration Act. Further, the Court's case law unquestionably establishes that precedent decisions constrain an agency's authority. Recently, in Gonzales-Caraveo, the Court looked at a case of administrative closure before the agency. That was something totally unreviewable, committed to discretion. But once the board issued a precedent decision in matter of Abitizian defining when admin closure is used, then it became reviewable before this Court, because the Court looked to whether the precedent was violated. It is clear that the NISDOT decision is similar. It was a restraint on the agency's authority and set forth the standards for the national interest waiver, and now matter of Danisar does the same thing. Sotomayor, where do Schneider and our MemDISPO, SODIPO fit in this analysis? So first to SODIPO, which is the unpublished Pro Se case, does not mention ANA at all in the decision, nor does it mention NISDOT or matter of Danisar. It just doesn't go through this analysis. You can think of many other issues raised that would not be reviewable before this Court under the national interest waiver standard, such as potentially the weighing of the evidence. But here we're raising specifically issues regarding the change in law with matter of Danisar, the ultra-virus argument that the regulation is ultra-virus to the statute, and that NISDOT was ultra-virus to the statute. We raise an arbitrary argument because the original decision said that Dr. Borsina engaged in taxation research, but that's actually not his field. He's an engineer. And then the other issue, of course, is the lack of notice issue on the second petition. He never received notice of that, and that is a totally, that's an issue totally. Sotomayor, I guess it was mailed, wasn't it? Right. So it's a last known address. Right. It was mailed. He didn't receive it. And there's this whole line of cases on whether the mail has been received. It just never got addressed by the Court, because the entire thing was dismissed under 1252. Well, I thought Farood v. INS decided that. Farood? Farood, F-A-R-O-U-D. I don't know that case, Your Honor. I'm sorry. I know the Salta decision addresses this precise issue in the context of removal proceedings where something's mailed but not received. Yeah, but so long as it was mailed to the last known address, that is sufficient notice. A whole bunch of cases say that. Well, no, but in Salta, there's not a presumption of proper delivery with regular mail, right? So in Salta, you can submit an affidavit and say, I know that was the right address, but I never got it. And then that's looked at as an evidentiary issue. And that was not done here. I mean, the idea that Dr. Porcina didn't have the incentive to respond is ludicrous because he's been trying to do this over and over, and as soon as he found out that the request for evidence was issued, he immediately moved. Now, more importantly, this is not something appropriate under 1252a2b2, right? This was goes to the merits of the case. Yeah, but regardless of how we decide the 1252a2 issue, you still come down to the whether this individual had due process. And so long as the notice was sent to the last known address, that's sufficient under our law, is it not? No, and the Salta decision really does go through this and says there's no presumption that under regular U.S. mail, it's delivered just because there are problems with regular U.S. mail where things are not received. This also just goes to the second petition. Most of the arguments we raise are on the first petition. The primary argument being after we filed this case, the board withdrew from NYSDOT and then issued matter of Danisar, and we were just trying to get a remand to consider this new precedent decision, but the court dismissed the entire claim under 1252a2b2. I also wanted to address the court's decision in Gephardt, which is the Adam Walsh waiver case. The Gephardt decision just recently issued addresses 1154a1a8i, and that is one of the waivers in the INA that contains the explicit language, sole and unreviewable discretion of the agency. And in Gephardt, the court did find that legal issues were not reviewable before the court, even in an ultra-virus argument. But Gephardt is not a 1252a2b2 case. It is a case where Congress was explicit regarding unreviewability, and it does not mention ANA nor does it mention Spencer Enterprises. So Gephardt is not controlling here because it is, again, an express statement of unreviewability. ANA, however, allows jurisdiction to review as long as there's a statutory hook and a precedent decision. In closing, I just want to again point out that ANA and KUKANA require this court to resolve any ambiguities in a jurisdiction-stripping statute in favor of the narrower interpretation and to apply the strong presumption in favor of judicial review. And I'll reserve my remaining time. Thank you.  GOTTLIEB. All right, counsel. MS. GOTTLIEB. Good morning. May it please the Court. Yamilet Davila on behalf of the appellees, the United States Citizenship and Immigration Services. The Court should dismiss the appeal for lack of subject matter jurisdiction. This Court should determine, consistent with its prior decisions in Sudeppo, Schneider, and the First Circuit's persuasive decision in Zou, that the national interest waiver is a pure discretionary grant of authority to the Attorney General and the agency. Plaintiffs fail to raise any colorable question of law or constitutional claim sufficient to invoke the Court's jurisdiction and the district court correctly dismiss the complaint for lack of subject matter jurisdiction. As mentioned, Your Honor, the Court should pay reference to the Zou decision from the D.C. Circuit, which addresses the national interest waiver specifically. In that case, contrary to counsel's assertion, the D.C. Circuit did deal with Ninth Circuit's decision in Anna International and Spencer. But D.C. Circuit law is not binding on us. So, while it may be persuasive, we are bound by our own precedent. And what's your response to opposing counsel's reliance on ANA? Yes, Your Honor. Our position is that ANA and Spencer can be harmonized with the agency, with the Court's determination here that there is no subject matter jurisdiction. And that is because there is no language in the statute that provides a hook for this interpret or have law to apply to interpret the national interest waiver. National interest. Are you discounting the precedential opinion from the INA, from the board? Your Honor, the Danisar decision, as well as NYS. which was in effect at the time that the agency issued its decisions here, are interpretive guidance for the agency. The Court may not turn to that because there is no hook in the statute. The statute must be considered first. And in the statute, there is a pure grant of authority, of discretionary authority to the agency. National interest is defined nowhere in the statute, nowhere in the regulation, not even in the policy statement of the agency when it issued its precedential decisions. But, counsel, doesn't your argument prevail only if we decide to disregard the published opinion from the board? Isn't that the only way your argument can succeed? Because doesn't that opinion give us the objective criteria to cap in the discretion of the agency? No, Your Honor. The government's position is that the Court may not look at the agency's interpretive guidance at all because there is no language in the statute itself. A published opinion is only interpretive guidance? It's interpretive guidance for the agency. That is correct, Your Honor. This case deals with a statute that is similar to the statute at issue in the Supreme Court's decision in Webster where there was a the National Security Act was at play. And the language in that statute was whether, excuse me, involved the discretion of the director of the CIA to terminate the employment of an employee when it was deemed to be in the national interest. That language is the same as what we see in the statute here for the national interest waiver. It is undefined. Congress intended it to be entirely flexible. And it the agency in providing interpretive guidance to its adjudicators has not granted the Court jurisdiction that Congress intentionally stripped the Court from in 1252a2b2. Counsel, may I ask you, what authority are you relying upon to support your position that a published opinion from the BIA is interpretive guidance as opposed to a governing precedent? Yes, Your Honor. The government makes reference to the Court's decisions in Anna as well as Spencer. Because, again, those decisions specifically say that there must be a hook in the statute itself. The Court must look at the statute first. The statute does not define or give any kind of criteria by which national interest must be determined by the Attorney General. It is not like the revocation statute. It is not like the EB-5 statute. Those were the statutes that were at play in Spencer and Anna. And there, accordingly, the Court found that there was law to apply. Here, national interest is completely and utterly undefined in the statute. That is consistent with the Supreme Court's determination in Webster, which also dealt with national interest. National interest is not some sort of criteria for the agency to apply. It is the determination itself, and it is entirely subjective. It involves economic and political choices that Congress intended to keep out of the Court's purview under 1252a2b2. So I look at it, counsel, there are really two issues here, whether the statute allows review of the national interest waiver and then the separate question of whether there was due process here. It could very well be that the first one is purely discretionary, but the second one is a legal issue which we can look at. Do you agree? Yes, Your Honor. If plaintiffs had raised a colorable due process claim, he simply failed to do that. The record establishes, as Your Honor pointed out, that the decision and the notice to deny were all mailed to the last known address. He doesn't challenge that he was actually residing at that address when it was sent. And, in fact, the SALTA decision establishes that there is a rebuttable presumption of regularity when the mail was sent. For regular mail? Yes, Your Honor. And in that case, they found that the presumption was effectively rebutted because the individual had participated in her immigration proceedings up to that point. What case was that? SALTA, Your Honor. Okay. Here, however, there was the presumption was not rebutted, and that is, first of all, because there is nothing in the record that indicates he wasn't actually living at that address for at least a year after the notice was sent. Second of all, Your Honor, he had already been, he was already in receipt of a notice of intent to deny his first national interest waiver, and actually did receive the denial during the pendency of the second RFE on the second national interest waiver. So a plaintiff had a reason to want to avoid further engagement with the agency at that point. He certainly, in this record, has not rebutted the presumption. And the district court was well within its discretion to find that there was no colorable due process claim. Counsel, do you have the SALTA decision before you? Not the decision. Yes, Your Honor. Court's indulgence, please. Okay. I was just going to ask you to show me the language that says for regular mail, there is a presumption, because I thought it said the opposite. I'm looking at page 1079 of SALTA. It says that, I thought, it appears to say, although it is still proper to presume that postal officers properly discharge their duties, delivery by regular mail does not raise the same strong presumption as certified mail. But there is a presumption in regularity, Your Honor. It may not be as strong as certified mail. And certainly here, there was nothing that rebutted that presumption other than plaintiff's self-serving statement that he didn't receive notice. Well, it says here that less is required to rebut the presumption that arises from delivery by regular mail. So why wouldn't his statement that he didn't receive it be enough to rebut that less strenuous presumption? Because it's entirely contrary to the record, which establishes that he did not move until June of 2015, and that these different decisions were mailed in 2014, in October, in August. Your Honor, he's living at the address where it was mailed. And certainly, Your Honor, he already had notices on denials and intents to deny the first national interest waiver at the time he claimed he never received the second. Under this record, there's simply no – there hasn't been an effective rebuttal of the presumption of regularity in the agency's conduct here. Your Honor? Other than a denial that this person never received the notice. Exactly, Your Honor. There is a self-serving denial of never having received the notice. That is correct, Your Honor. Is that denial timely made? No, Your Honor. In fact, the record indicates that the decision denying the second I-140 was issued on the 7th of October, and that counsel for the individual actually called on the 28th of October of the same year. And so he certainly was aware of the denial within a week of it having been issued. So, again, this cuts contrary to any kind of assertion that he never received the denial. Your Honor, I also wanted to address plaintiff's repeated assertions that the agency did not consider his actual area of knowledge or field of experience when the national interest waiver was denied. That assertion is completely undercut by the record. It's unsupported in every way. Are we allowed to look at that? Your Honor, our position is that the Court should dismiss the claim. Excuse me. On discretionary grounds. On discretionary grounds, Your Honor. But I wanted to address a misrepresentation of the record that was made by counsel. And I wanted to point the Court to pages 97 through 104, which have the agency's decision on it, where the agency unequivocally states that he is a mechanical engineer. They did not misunderstand what his field of area is. This is a very thorough decision by the agency, some nine pages long, where his various credentials are discussed, including his teaching engagements and articles that he has written or co-authored. There was no misunderstanding by the AAO on what it is that the plaintiff does professionally. And, again, the only the last decision of the agency is the April 22, 2015 decision. So any kind of other statements in the interim decisions, which we assert are also not incorrect, are really irrelevant as well. One more point, Your Honors, I wanted to address. The ZHU decision is certainly persuasive authority from the D.C. Circuit. But the government submits that it is very important for this Court's consideration because of two things. First of all, it's the only other circuit to have to consider its jurisdiction regarding the National Interest Waiver, but also because it postdates this Court's decision in Anna and in Spencer. And it does address Anna and Spencer. In fact, it says that even under the Ninth Circuit's more stringent basis regarding criteria for pure discretionary grants of authority, this statute would qualify. And it cites the Supreme Court's decision in Webster for that proposition. It's not arguing that ZHU overrules our case. No, Your Honor, absolutely not. But I wanted to make clear that it actually did consider the Ninth Circuit's determinations in Anna and Spencer because plaintiffs just argued that that decision makes no reference to Ninth Circuit authority when it made its determination. And that is incorrect. In conclusion, if there are other questions, Your Honor. to determine whether or not the discretion of the agency is cabined. Why am I wrong in thinking that language such as decisions made on a purely legal basis, whether or not that basis is specified in INA and including the no, no, that's not it. Legal standards outside may serve as an anchor for jurisdiction by looking to the INS regulations, for example. Why doesn't that authorize us to look at a published opinion from the agency? Your Honor, in Anna, it definitely says that you can look to agency determinations. However, there must first be a hook in the statute itself. Well, I think it goes beyond that to say in addition to the statutory language, we may look to other sources. What language are you relying on to support your argument that there must be a statutory hook before we can look to any other source to inform us regarding the standards for the exercise of discretion? Point me to the specific language. Court's indulgence, please. All right. Thank you. Your Honor, I would point the Court's attention to Headnote 10. I'm sorry, Your Honor, one second. Headnote 10. Are we talking about ANA? Yes, Your Honor. ANA Headnote 10. I think that's page 893. Okay, I'm looking there. It's talking there about standards gleaned from regulations and agency practice. Yes, Your Honor. It says there must, in other words, be an anchor in the statutory language itself to render the rule imposed by the decision relevant to our inquiry. And so, Your Honor, again. Where are you? Headnote 10, first paragraph or second paragraph? Second paragraph. It starts with Spencer and the page ‑‑ I can't find the page number. It's page 893. I'm just trying to see. And so, again, Your Honor, the anchor must be in the statute itself. Here there is ‑‑ Wait, wait, wait. Because looking down through that paragraph, it's like the fifth sentence. It says looking to judicial precedent is one of the methods we would ordinarily use to understand a statute. Yes, Your Honor. There must, however, be an anchor in the statutory language itself to render the rule imposed by a decision relevant to our inquiry, imposed by the agency's decision relevant to the inquiry. I think we're going to disagree on this point because it also says Spencer does not cast aside the agency's own published interpretation of its statute to help us decide what the statute means. So I think it's incorporating both the statute and the agency interpretation. I just don't see that there's a distinction made that you're making. The government is not saying that the court would never turn to agency interpretation. But first the court must turn to the statute itself. And national interest does not provide any rules to ‑‑ any standards to apply that would allow the court to then turn to the agency's decisions. I understand your argument. That makes it distinct from Spencer and ANA where those statutes absolutely included rules in the statute itself. I get your argument. Thank you. In conclusion, the Court should dismiss the appeal. Thank you, Your Honors. Thank you. Rebuttal. Thank you. Just a couple of points, Your Honors. The first is that the standard in ANA is good and sufficient cause, which is a pretty broad, amorphous standard. And the Court uses that as a statutory hook then to look ‑‑ But that's a phrase that is used all the time in all kinds of contexts. It is. And we have to interpret it. We interpret it all the time in employment cases and all kinds of things. Well, and I think the Court notes that but says, okay, well, in matter of topic, there actually is an interpretation of that standard for visa revocation. And so that's why in ANA they find jurisdiction to review that. Here we have the term national interest. And if you look at the agency's decisions in matter of DANASAR, which is the newer one, it lays out the three‑part test. And then it says, if these elements are satisfied, USCIS may approve the national interest waiver as a matter of discretion. So these are eligibility criteria for the national interest waiver. It's a very clear test. And it does meet the ANA standard. In addition, the council ‑‑ But opposing ‑‑ Sorry. Go ahead. But opposing council's argument is you never even get there unless there is some So what's your response? Exactly. And the term is in the national interest. If we look at ‑‑ Do we want the Ninth Circuit to go and the courts in all of these cases to be determining what the national interest is? No. We want the agency to determine it, right? So if there was no published decision ‑‑ Isn't that what they did here? Right. But here, I mean ‑‑ And you want us to review it. Well, what we really want is just the standard applied, the remand under NLRB versus food stores, right? While this case is pending, NISDOT gets vacated. Matter of Danisar is issued. We were just trying to get a remand to apply this, and even that has not been possible because the test is quite different. The agency is the master of this test. And ultimately, if there are established criteria that are set forth, then yes, it is reviewable, but only under these criteria. I mean, the court has done this. Look at this Gonzalez‑Garaveo case, which is administrative closure, which is discretionary. But the court said that the board decision in a matter of Abitizian lays out these factors, and if there's a failure to follow precedent, then that is reviewable. And so the agency sets the factors out. All the court does is make sure the agency is following the law. I do want to point out that the Zhu case addresses Spencer Enterprises. It doesn't address ANA and this analysis of using precedent. And Judge O'Scanlan, I did not get to your question on Schneider. I apologize. Schneider was a case, of course, involving a different part of the statute, using mandatory language. But Schneider only in dicta states that this part is discretionary. It doesn't address ANA and Spencer and the statutory hook and the precedent decision. So it would not be binding on the court. The key here is the precedent decision interpreting national interest. What about Sotepo? And Sotepo we talked about earlier, which was the unpublished Pro Se case, where there's no mention of ANA at all and there's no mention of NYSDOT. So it's wrong? Well, it's incomplete. I mean, it's incomplete, right? Because ultimately the waiver is discretionary, but parts of it are reviewable. It's just like cancellation of removal, which the court had said originally it's a discretionary decision. We can't review it. It's exceptional and an extremely unusual hardship. That's up to the agency. But the court carved out an exception for the review of a failure to follow precedent or for legal issues. And that's what we're asking here. We're not saying the entire thing is reviewable. We're saying these legal issues that are limited are reviewable. I do want to point the court to other parts of the statute where there is no statutory hook. So a good example of this is the stay of removal at 1227D, where ICE may issue a stay for people who have been found to be victims of trafficking or of crimes, and they may be, their removal may be stayed while the visa petition is pending. There's no stay there. There's no stay, I'm sorry, there's no standard there for the stay. There's no standard for many other places in the INA where just the term may is used, but there is no statutory hook. It's true in the context of the fiancé visa, where there's a requirement that the parties may have to meet in person, but that may be waived in the discretion of the secretary. No standard there. And there's more examples of that in the brief. So there are situations where there is no statutory hook, but this is one of those rare instances where the statute exactly meets the requirements in the INA. We have the term may, and we have a statutory hook there, good and sufficient cause, and here, national interest. Now, going to the issue of notice, I just want to point out, as soon as Dr. Porcina's attorney learned of this denial, they filed a motion to reconsider, like, the next day. So the diligence was there. As soon as they find out they acted, they just did, and that's all in the complaint. There's no evidence in this case, by the way, because this was just a complaint. So we never got to an evidentiary stage. Everything here was just alleged and then dismissed under jurisdiction. So, counsel, do you agree that even for regular mail, there is a presumption of regular delivery? It's a weak presumption that's rebuttable. I mean, that is what SALSA lays out, Your Honor. And so how is that presumption rebutted? Is it enough just to say, I didn't receive it? Well, that and the incentive, right? And so Dr. Porcina, as soon as they find out, and this is in the amended complaint, they immediately move to reconsider and act. I mean, they file all of these endless documents trying to get reconsideration, and the USCIS won't consider them at all. So if he wasn't being diligent in his case, that would be relevant, but that's certainly not the case here. And I see I'm out of time, if there's no remaining questions. Great. Thank you, Your Honor. Thank you to both counsel for your helpful arguments in this case. The case just argued is submitted for a decision by the Court. The next case on calendar for argument is Jabrilasi v. United States Citizenship and Immigration Services. While counsel are making their way forward, I'd like to welcome and thank the students from Drew High School who have joined us.
judges: Schroeder, O'scannlain, Rawlinson